UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

LITMAN, et al.,

        Plaintiffs,

v.                                          Civil Action No.: 07-CV-4886(FLW)
                                            **OPINION**

CELLCO PARTNERSHIP d/b/a
VERIZON WIRELESS,

        Defendant.
_____

**WOLFSON**, **United States District Judge:**

    Plaintiffs Keith Litman and Robert Wachtel (collectively "Plaintiffs"), Verizon customers since at least 2004, bring this class action lawsuit against Defendant Cellco Partnership d/b/a Verizon Wireless ("Defendant" or "Verizon") alleging Defendant improperly imposed an administrative charge on their cellular telephone accounts. In accordance with the Customer Agreements between the Plaintiffs and Verizon, which included arbitration provisions, Defendant files the current Motion to Compel Arbitration in lieu of an Answer.[1] Plaintiffs argue that the arbitration provisions' preclusion of class arbitration should be invalidated because they are unconscionable under New Jersey law. On the other hand, Defendant claims that the Federal Arbitration Act ("FAA"), as interpreted by the Third Circuit, preempts New Jersey law. For the reasons discussed below, the Court finds that the arbitration agreement is enforceable and Defendant's Motion to Compel Arbitration is granted.

---

[1] Defendant simultaneously files a Motion to Dismiss Plaintiffs' claims. Having determined that the parties must arbitrate their claims, this case is dismissed, and the separate Motion to Dismiss is moot.

**I. Factual Background and Procedural History**

The Court will only recount facts relevant for the purpose of this motion. On October 9, 2007, Plaintiffs filed this suit against Verizon on behalf of other similarly situated Verizon customers claiming that they were unlawfully charged an "administrative charge" of $0.40 and/or $0.70, as part of the monthly charges for each of their Verizon phone lines. Complaint ("Compl.") ¶ 1. Verizon provides wireless communication services to over 60 million customers and telephone lines nationally. Id. ¶ 8(b). Plaintiffs allege that at the time they became Verizon customers and entered into their fixed price contracts with Verizon, Verizon did not charge an administrative charge and nothing in the service agreements specifically authorized Verizon to add such a charge. Id. ¶ 21(a). Plaintiffs, however, allege that in October 2005, Defendant unilaterally decided to assess an administrative charge to all customers and informed all customers of this change with a standard notice form. Id. ¶ 21(b).

Plaintiffs have been Verizon customers since at least 2004 and concede that, prior to January 2005, Verizon used a standard customer agreement ("Agreement") with an arbitration provision. Id. ¶ 9.[2] The Agreement required Plaintiffs and Verizon "TO SETTLE DISPUTES (EXCEPT CERTAIN SMALL CLAIMS) ONLY BY ARBITRATION." Defendant's Motion to Compel Arbitration ("Def. Mot.") Ex. A, CA-7; D, 12 (emphasis in original). Plaintiffs allege

---

[2] Defendant claims that the November 2006 Agreement governs Litman's Verizon account and the September 2007 Agreement governs Wachtel's Verizon account. Defendant's Motion to Compel Arbitration ("Def. Mot.") Ex. A, D. While Plaintiffs state that "Defendant needlessly confuses the question of what version of Verizon's Agreements control each Plaintiff's account and when," Plaintiffs agree that their continued use of Verizon's services made the revised Agreements effective. Plaintiffs' Brief in Opposition to Defendant's Petition to Compel Arbitration ("Pl. Opp.") at 2 n. 2. Because Verizon's customer service agreements have the same language regarding arbitration, FAA applicability, and the class arbitration waiver, they are addressed as one, "the Agreement," in this Opinion.

that, in January 2005, Verizon "adhesively" modified the Agreement's arbitration provision. Id. ¶¶ 9, 10. The modification stated that the "THE FEDERAL ARBITRATION ACT APPLIES TO TH[E] AGREEMENT" and that the Agreement "DOESN'T PERMIT CLASS ARBITRATION." Def. Mot. at Ex. A, CA-8; D, 12 (emphasis in original). This revised Agreement also states that "IF FOR SOME REASON THE PROHIBITION ON CLASS ARBITRATIONS . . . IS DEEMED UNENFORCEABLE, THEN THE AGREEMENT TO ARBITRATE WILL NOT APPLY." Id. at Ex. A, CA-9 (emphasis in original).

In accordance with the Agreement's arbitration provision, Verizon has moved to compel Plaintiffs to individually arbitrate their claims, consistent with the requirements of the Federal Arbitration Act ("FAA"). In response, Plaintiffs argue that because the New Jersey Supreme Court, in Muhammad v. County Bank of Rehoboth Beach, Del., 189 N.J. 1 (2006), has held that an arbitration provision in a consumer contract of adhesion that precludes class arbitration of low-value claims is unconscionable under New Jersey law, similarly, the arbitration provision in their Agreement is unenforceable. On the other hand, while the parties agree that Plaintiffs may proceed with this lawsuit if Muhammad controls, Defendant contends that, for a number of reasons, Muhammad is preempted by the FAA, the class arbitration waiver is valid, and Plaintiffs must arbitrate their claims individually. This Court agrees.

## II. Discussion

### A. The Federal Arbitration Act ("FAA")

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Tech., Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986) (citations omitted); see also

3

Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp., 868 F.2d 573, 576 (3d Cir. 1989) (per curiam). "The question whether the parties have submitted a particular dispute to arbitration . . . is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (internal quotations and citations omitted); see also Laborers' Int'l Union of N. Am., 868 F.2d at 576. The court does not consider the merits of the claim, but "decides only whether there was an agreement to arbitrate, and if so, whether the agreement is valid." Great W. Mortgage Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1996) (citing 9 U.S.C. § 2). If the court finds there is an agreement to arbitrate, the disposition of the merits is left to the arbitrator. Id. The Third Circuit has set forth a two-prong inquiry for courts to use when determining whether to compel arbitration. Under this two-prong test, the questions posed are: "(1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall within the language of the arbitration agreement?" John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998) (citations omitted).

With respect to the first prong, "[f]ederal law determines whether an issue governed by the FAA is referable to arbitration." Harris v. Green Tree Fin. Corp.. 183 F.3d 173, 178 (3d Cir. 1999). Similarly, the interpretation and construction of arbitration agreements is determined by reference to federal substantive law. See Id. at 179; see also Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25 n. 32 (1983). While federal law is used to interpret such agreements, state law may be applied, pursuant to § 2 of the FAA. Harris, 183 F.3d at 179. Section 2 of the FAA provides that arbitration agreements are "valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA was implemented "to reverse the longstanding judicial

4

hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." Gay v. CreditInform, 511 F.3d 369, 378 (3d Cir. 2007) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). As such, the FAA creates a "strong presumption in favor of arbitration, and doubts 'concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Great W. Mortg. Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1997) (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25). Nonetheless, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 687 (1996). "The party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability." Harris, 183 F.3d at 181.

The Third Circuit has recently reaffirmed that "[t]he text of § 2 provides the touchstone for choosing between state-law principles and the principles of federal common law envisioned by the passage of the FAA: An agreement to arbitrate is valid, irrevocable, and enforceable, as a matter of federal law, 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" Gay, 511 F.3d 369 at 394 (quoting Perry v. Thomas, 482 U.S. 483, 492 n. 9 (1987)) (emphasis in original). "[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." Id. In Perry, the Supreme Court found:

> A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2. A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law. Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what we hold today the state legislature cannot.

483 U.S. at 492 n. 9 (internal citations omitted).  Confirming that the "FAA reflects a liberal federal policy favoring arbitration agreements," the Third Circuit, in addressing class action waivers in arbitration agreements, held that "whatever the benefits of class actions, the FAA requires piecemeal resolution when necessary to give effect to an arbitration agreement."  Gay, 511 F.3d at 394 (internal citations and quotations omitted) (emphasis in original).  Therefore, the Third Circuit has found that class action waivers in arbitration agreements are not per se unconscionable, but rather are valid, irrevocable, and enforceable under 9 U.S.C. § 2.  Id.

The second part of the two-prong test requires the Court to determine if the dispute between the parties falls within the language of the arbitration agreement.  See John Hancock Mut. Life Ins. Co., 151 F.3d at 137.  Because Plaintiffs do not dispute that the Agreement's arbitration provision, if valid, applies to them, the Court need not conduct an in-depth analysis of this second question.

**B. The FAA Requires Enforcement of the Arbitration Agreement**

Although the FAA requires enforcement of valid arbitration agreements that include class action waivers, nonetheless Plaintiffs argue that the Agreement's arbitration clause is unenforceable because its class arbitration waiver renders it unconscionable pursuant to Muhammad.  In Muhammad, the New Jersey Supreme Court held that, under state law, class arbitration waivers may be unconscionable and unenforceable when they are in an arbitration agreement that is part of a consumer contract of adhesion.  189 N.J. at 6-7.  Muhammad was a customer of a payday loan company who received a short-term unsecured loan.  Id. at 7.  She brought suit on behalf of herself and other consumers similarly situated claiming that the terms

of the loan violated the New Jersey Consumer Fraud Act ("CFA").  Id. at 6.  The parties' agreement included an arbitration provision requiring all disputes to be "resolved by binding individual (and not class) arbitration," and that the plaintiff "not bring, join or participate in any class action as to any claim, dispute or controversy [the plaintiff] may have."  Id. at 8.  First, the Court separated these two clauses and only examined the class arbitration clause, leaving the validity of the rest of the agreement to be determined by the arbitrator.  Id. at 9-10.  Next, the Court determined that the arbitration agreement was part of a contract of adhesion and therefore had some element of procedural unconscionability.  Id. at 15.  Finally, the Court found that the arbitration clause acted as an exculpatory clause in cases where claims were likely to be of low-value.  Id. at 20.

In Muhammad, the Court distinguished its case from Gras v. Associates First Capital Co., 346 N.J.Super. 42 (2001), cert. denied, 171 N.J. 445 (2002), which held that class action waivers in arbitration agreements are not per se unconscionable.  Instead, the Court observed what it declared to be a crucial factual distinction, which merited a different result: "Gras, however, did not present the precise issue before the Court in this matter: whether the small amount of damages being pursued is this action involving complicated financial arrangements and multiple out-of-state entities effectively prevents plaintiffs from being able to vindicate the public interests protected by the CFA."  Id. at 22.[3]  Thus, the Court held that the class arbitration waiver at issue, which barred class arbitration in obviously low-value claims, acted as an exculpatory clause and, hence, was unconscionable and unenforceable under state law despite New Jersey's public policy favoring arbitration.  See Id. at 20-23.  As a result, here, where the Plaintiffs'

---

[3]The New Jersey Supreme Court's ruling arguably makes all class arbitration waivers in consumer contracts involving low-value claims per se unconscionable and unenforceable.

7

claims involve low-dollar value consumer claims, both parties agree that the Agreement's class arbitration waiver clause is unconscionable under New Jersey law.  However, Defendant argues that Muhammad's holding is inconsistent with, and therefore preempted by, the FAA.  Moreover, Verizon cites the Third Circuit's recent decision in Gay v. CreditInform, 511 F.3d 369, 378 (3d Cir. 2007), as further and definitive support for that proposition.  On the other hand, if Muhammad controls, the parties agree that Plaintiffs may proceed with this lawsuit, as opposed to pursing its class action in arbitration.  See Pl. Opp. at 3; Df. Mot. at 9.  Therefore, the issue before this Court is whether the FAA preempts the holding of Muhammad here.

The Third Circuit addressed this precise issue in Gay, where the court held that a state law determination that precludes, on unconscionability grounds, enforcement of an agreement to arbitrate low-value consumer claims on an individual basis is preempted by the FAA.  511 F.3d 369.  In Gay, even though two Pennsylvania lower state court cases, Lytle v. Citifinancial Services, Inc., 810 A.2d 643 (Pa. 2002) and Thibodeau v. Comcast Corp., 912 A.2d 874 (Pa. 2006), supported the plaintiff's argument that the class arbitration waiver was unenforceable, the Third Circuit noted it was neither bound by these lower state court decisions, nor would it be bound even if they were Pennsylvania Supreme Court cases, because the Circuit was bound by "federal law that Congress set forth in the FAA" and state law "must conform with it."  Id. at 393-94 n. 18.  In that connection, the Circuit held that class waivers in arbitration agreements are "valid, irrevocable, and enforceable" under the FAA notwithstanding state law to the contrary.  Id. at 394.  Specifically, the court in Gay held "[t]o the extent, then, that Lytle and Thibodeau hold that the inclusion of a waiver of the right to bring judicial class actions in an arbitration agreement constitutes an unconscionable contract, they are not based 'upon such grounds as exist at law or in equity for the revocation of any contract' pursuant to § 2 of the FAA, and

8

therefore cannot prevent the enforcement of the arbitration provision in this case." Id. (citing 9 U.S.C. § 2). The Third Circuit applied the language of § 2 to class arbitration waivers and rejected the claim that such waivers are unconscionable. See Id. at 395. Instead, the Third Circuit held that the Commerce and Supremacy Clauses of the United States Constitution require the application of the FAA and the FAA strongly favors upholding arbitration agreements. Id. (citing U.S. Const., Art I, § 8 cl. 3; IV, cl. 2). Thus, the Circuit left very little room for this Court to invalidate an arbitration clause on the basis of a class waiver provision, even if it is unconscionable under state law.

That would seem to end the analysis here, but Plaintiffs argue that Gay does not require this Court to find that the FAA preempts Muhammad. Plaintiffs contend that the cases discussed in Gay, namely Lytle and Thibodeau, are distinguishable from Muhammad because Muhammad is "entirely neutral with respect to arbitration agreements," as the Court rejected class-litigation waivers generally, not just class-arbitration waivers; that the New Jersey Supreme Court decided Muhammad on general contract principles and did not demonstrate hostility to the arbitral forum, whereas the two Pennsylvania state cases found that an agreement to arbitrate may be per se unconscionable. See Gay, 511 F.3d at 395; Muhammad, 189 N.J. at 22. That distinction does not hold water. "A court may not . . . in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law." Perry, 482 U.S. at 492. However, in Muhammad, the New Jersey Supreme Court only looked at a class arbitration waiver and did not look at broad class action waivers; the Court said:

> In this matter . . . there are two types of class-action waivers in the contracts Muhammad signed: the class-arbitration waivers and the broad class-action waivers. The broad class-action waivers could be considered distinct from the arbitration agreement in the

9

>contracts, and thus could be considered part of the 'contract as a whole.' . . . That situation is not before us, however, because there are distinct class-arbitration waivers, . . . [which] based on their location and subject matter[] are part of the arbitration agreements, and not part of the contracts as a whole.

Id. at 14. Further, although the Court, in Muhammad, stated that "[a]s a matter of generally applicable state contract law, it was unconscionable for defendants to deprive Muhammad of the mechanism of a class-wide action, whether in arbitration or in court litigation," Id. at 22, nonetheless, the Court was not considering the validity of the broad class action waiver and considered the arbitration agreement separate from the contract. Thus, the Court's mention of "class-wide . . . in court litigation" is dicta. Id. Nevertheless, even if the Muhammad Court intended to rule that all class-action waivers of this nature were unconscionable, our conclusion would be the same because, in Thibodeau, the Pennsylvania court similarly held that "[t]he preclusion of class wide litigation or class wide arbitration of consumer claims, imposed in a contract of adhesion, [wa]s unconscionable and unenforceable." See Thibodeau, 912 A.2d at 886. The Third Circuit found that the FAA preempted this state law interpretation, despite the fact that the state court purported to reject the waiver of class treatment in general and not just in the context of arbitration clauses.

In Gay, the Third Circuit specifically addressed the issue of a seemingly neutral holding involving an arbitration agreement "written ostensibly to apply general principles of contract law" and ruled that "[a] finding that the arbitration provisions in [the Pennsylvania state] cases are unconscionable can be reached only by parsing the provisions themselves to determine what they provide." 511 F.3d at 395. The same can be said of the finding in Muhammad, as the New Jersey Supreme Court had to "pars[e] the provisions themselves to determine what they provide." Id. Under Gay, this appears to be enough to indicate that the New Jersey Supreme Court treats arbitration agreements differently from other contract provisions. Just as the Circuit

10

noted in <u>Gay</u>, the Plaintiffs here rely on the effect of the arbitration provisions to frame their unconscionability arguments: they "contend that the provision is unconscionable because of what it provides, i.e., arbitration of disputes on an individual basis in place of litigation possibly brought on a class action basis." <u>Id.</u>  Thus, this Court is not persuaded by Plaintiffs' arguments that <u>Muhammad</u> is distinguishable from <u>Lytle</u> and <u>Thibodeau</u> such that this case is not subject to the holding in <u>Gay</u> that the federal law Congress set forth in the FAA "is controlling and the [state] law must conform with it." <u>Id.</u> at 393.  Rather, I find that the facts of <u>Gay</u> itself belie the distinction Plaintiffs attempt to draw.

      Plaintiffs also contend that the Pennsylvania state decisions did not set "definitive [state] precedent" binding the Third Circuit because <u>Lytle</u>, a Pennsylvania Superior Court case, was remanded for reasons related to class certification instead of the arbitration issue.  The Third Circuit acknowledged that "<u>Lytle</u> and <u>Thibodeau</u> [we]re Superior Court cases and thus even if [the Third Circuit] were concerned with pure state law they would not bind [the Third Circuit]," but it further stated "that <u>even if they were Pennsylvania Supreme Court cases [the] result would [have been] the same</u>." <u>Id.</u> at 394 n. 18 (citation omitted) (emphasis added).  Similarly, <u>Muhammad</u> does not bind this Court, since the issue here is the FAA, a federal law, and "[New Jersey] law must conform with it." <u>Gay</u>, 511 F.3d at 393.

      It is also of no consequence that <u>Muhammad</u> was decided under New Jersey law whereas <u>Lytle</u> and <u>Thibodeau</u> were interpretations of Pennsylvania law.  In <u>Thibodeau</u>, a customer brought a class action lawsuit against a cable company claiming damages, also of such a minimal value that individual claims were unlikely to be brought, caused by subscribers being charged for equipment that they did not need.  <u>See</u> 912 A.2d at 876.  The customer agreement had an arbitration clause requiring individual arbitration and the court held that an arbitration

11

agreement containing a class waiver, which Plaintiffs challenged, was unconscionable under Pennsylvania law. Id. at 878. Muhammad is similar to Thibodeau in its holding and its reasoning. The New Jersey Supreme Court, like the Pennsylvania courts, found that the clause acted as an exculpatory clause protecting the stronger party. See Muhammad, 189 N.J. at 6. Similarly, in the instant case, Defendant's arbitration clause acts to preclude class action in any forum and the claims in this case are also of low-value. While the holding in Muhammad, if controlling, would render Defendant's class arbitration waiver unconscionable under New Jersey law, the Third Circuit has already held that such an arbitration provision is enforceable under § 2 of the FAA. See Gay, 511 F.3d at 376. Indeed, the Circuit specifically analyzed the holdings in Lytle and Thibodeau to demonstrate why the FAA preempts state law; the Circuit concludes its discussion of the Pennsylvania cases by noting its obligation to "honor the intent of Congress" and "[i]f the reach of the FAA is to be confined then Congress and not the courts should be the body to do so." Id. at 395.[4] Applying Gay's holding, at least two courts in this circuit, in accordance with § 2 of the FAA, have compelled arbitration in cases where the facts surrounding the Agreement, arbitration clause, and class arbitration waiver are substantially similar to this case. See Weinstein v. AT&T Mobility Corp., No. 07-2880, 2008 WL 1914754 (E.D.Pa. April

---

[4] Plaintiffs also argue that Gay does not preempt Muhammad based on Shroyer v. New Cingular Wireless Services, Inc., 498 F.3d 976 (9th Cir. 2007), a class action involving a wireless company. See Pl. Opp. at 18. The Ninth Circuit held that "[t]he Federal Arbitration Act does not bar federal or state courts from applying generally applicable state contract law principles and refusing to enforce an unconscionable class action waiver in an arbitration clause." Shroyer, 498 F.3d at 987. While the Ninth Circuit has held that the FAA does not preempt state contract law principles invalidating class action waivers in arbitration clauses in these cases, this Court is subject to the binding precedent of the Third Circuit. See also Steiner v. Apple Computer, Inc., No. 07-4486, 2008 WL 1925197, at *3 (N.D.Cal. Apr. 29, 2008). In Gay, the Third Circuit held that the presence of a class arbitration waiver, even where it is unconscionable under state law, is not grounds for rendering an arbitration clause unenforceable. 511 F.3d at 394.

12

30, 2008); Halprin v. Verizon Wireless Services, LLC, No. 07-4015, 2008 WL 961239 (D.N.J. April 8, 2008).[5]  Therefore, this Court too holds that, insofar as the FAA and Muhammad are inconsistent, federal law preempts the holding in Muhammad.  See U.S. Const., Art IV, cl. 2.

Moreover, the Third Circuit has recently reinforced that the FAA establishes a strong federal policy in favor of resolution of disputes through arbitration and, absent fraud or misrepresentation, requires enforcement of arbitration clauses within agreements for which parties freely contract.  Morales v. Sun Constructors, — F.3d —, 2008 WL 3974059, at *2-3 (3d

---

[5]In Weinstein, the court denied the plaintiff's arguments regarding procedural and substantive unconscionability and granted the defendant's motion to compel arbitration; the court held that, pursuant to the Third Circuit's ruling in Gay, the FAA preempted the state court application of state law that held class waiver provisions in arbitration agreements unconscionable.  See 2008 WL 1914754 at *5.
    In Halprin, dealing with a challenge to the class arbitration waiver in a Verizon customer service agreement, the court compelled arbitration in accordance with Gay's holding and application of the FAA.  The Halprin Court found that it "must determine that the 'contract in general' is unenforceable, not just the individual 'agreement to arbitrate'" to invalidate a contract under state law pursuant to the language of the FAA.  2008 WL 961239 at *6 (quoting Gay, 511 F.3d at 395).  While the court applied Virginia state law when it declined to find the agreement unconscionable, it stated that it was "dubious that Plaintiff would prevail even under New Jersey's unconscionability rubic."  Id.
    Plaintiffs argue that the FAA does not preclude a state's use of substantive unconscionability to invalidate a class waiver in an arbitration agreement.  As stated in Muhammad, under New Jersey law, the Court must consider both the procedural and the substantive unconscionability of an agreement.  See 189 N.J. at 15.  When considering this standard, the Halprin court stated: "[i]f an agreement is one of adhesion, where an agreement is 'presented on a take-it-or-leave-it basis,' then it indicates procedural unconscionability.  In addition to considering the adhesive nature of a contract, the Court must also consider the subject matter of the contract, the parties' relative bargaining position, the degree of economic compulsion motivating the 'adhering' party, and the public interests affected by the contract."  2008 WL 961239 at *7 (internal citations omitted).  Given the facts presented here and the Third Circuit's decision in Gay, like in Haplrin, while the Agreement between Plaintiffs and Defendant bears the qualities of an adhesion agreement, the other factors do not indicate that the entire Agreement is substantatively unconscionable under the FAA; while Verizon clearly has more bargaining power as between the two parties, Plaintiffs were free to do business with any number of cell phone companies, choose not to obtain a cell phone, or discontinue their Verizon phone service.  See Id. at *6-7.  Therefore, when looking at prior case law applying the FAA, this Court too finds it necessary to compel arbitration.

13

Cir. 2008). In <u>Morales</u>, the Third Circuit held that an employee, who was illiterate, was nevertheless bound by an arbitration clause in an employment agreement that he signed; "the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable." <u>Id.</u> at *3. Rather, the court held that it was the plaintiff's obligation to ensure he understood the agreement before he signed it, even where he is ignorant of the language in which the agreement was written. <u>See Id.</u> at *4. <u>Morales</u> amply demonstrates the force of the presumption in favor of arbitration.

In this case, Plaintiffs are customers who chose Verizon as their wireless provider at least four years ago and continue to use Verizon today. They signed the customer Agreement with the arbitration clause and agreed to subsequent terms of service as added by Verizon. Plaintiffs do not allege that they did not understand the Agreement that they voluntarily entered into nor do they allege fraud or misrepresentation. The parties agreed "to settle [their] disputes . . . only by arbitration," Def.'s Mot. at Ex. A, CA-7, and the "agreement doesn't permit class arbitration." Def.'s Mot. at Ex. A, CA-8. Therefore, the FAA requires this Court to uphold the arbitration provision within Plaintiffs' service Agreement.[6] Since the arbitration clause and class arbitration waiver are valid, Plaintiffs must bring their claims against Defendant through individual

---

[6] The Court recognizes the many hardships visited upon plaintiffs, such as in this case, based upon this ruling. First, it creates the opportunity for a different result depending on whether the case is brought in federal or state court. Second, it is also clear that compelling individual arbitration in this case will be tantamount to ending the Plaintiffs' pursuit of their claims, as there is very little possibility that these Plaintiffs or any other plaintiff will pursue individual arbitration for claims that amount only to several dollars in damages. While this outcome is harsh, this Court is bound by Third Circuit precedent. As the <u>Gay</u> court noted, any other ruling "could result in a significant narrowing of the application of the FAA. We express no view on whether that might be a desirable result as it is not our function to do so. Rather, our obligation is to honor the intent of Congress and that is what we are doing. If the reach of the FAA is to be confined then Congress and not the courts should be the body to do so." 511 F.3d at 395.

arbitration.


**IV.  Conclusion**

       For the foregoing reasons, Defendant's Motion to Compel Individual Arbitration is granted and the case is dismissed.


Dated September 29, 2008                                       /s/ Freda L. Wolfson
                                                                                 Honorable Freda L. Wolfson
                                                                                 United States District Judge